CHOICE JACKSON v. STATE.

No. A-9386.  Aug. 11, 1939.

(93 P. 2d 55.)

Joe Adwon, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DOYLE, P. J.  Choice Jackson, herein referred to as the defendant, was convicted in the district court of Oklahoma county of the crime of burglary in the second degree, after former conviction of a felony, and his punishment fixed at imprisonment in the state penitentiary for the term of 15 years. Motion for new trial was duly filed, heard and overruled on March 8, 1937; thereupon the court pronounced judgment and sentence in accordance with the verdict of the jury. From which judgment and sentence the defendant appealed by filing in this court on September 8, 1937, a petition in error with casemade.

The information in substance charged that in Oklahoma county on the 24th day of August, 1936, Choice

Jackson, alias C. Taylor, alias Charles Jackson, did burglariously and feloniously break into and enter a two-story brick building located at 1510 Wilshire Boulevard, Nichols Hills, owned and in the possession of H. D. Simms, in which certain household furnishing and other personal property was kept, by forcibly entering through the front door of said building by using a pass key, and entering therein with the felonious intent of said defendant to take, steal and carry away, without the consent of the owner, said personal property. And the said defendant at said time did take certain articles, to wit: One platinum watch and chain set with diamonds, one man's gold ring set with one diamond; one lady's dinner ring platinum set with diamonds; one lady's dinner ring platinum set with one large and several small diamonds; four yellow gold bracelets set with pearls; ten silver dolars, and one Schwab safe, six New York Life insurance policies, all of the total value of $2,435.00, the personal property of said H. D. Simms.

The only question worthy of notice, which the record presents, goes to the merits of the case.

It is claimed by the defendant's counsel, in an elaborate argument, that the court erred in overruling the demurrer to the evidence at the close of the state's case.

The material and undisputed facts in this case as disclosed by the testimony are as follows:

H. D. Simms, of 1510 Wilshire Boulevard, Nichols Hills, Oklahoma county, was the owner of a two-story brick residence, located at that number; during the month of July, 1936, he employed the defendant as a houseman and chauffeur; about two weeks thereafter he and his wife went to Hot Springs, Ark.; the defendant and the negro maid went with him. Approximately two weeks after they arrived at Hot Springs, he discharged the defendant and the maid, then went with them to the bus station and purchased tickets to Oklahoma City for them.

The next time Mr. Simms saw the defendant, he was in the county jail at Oklahoma City. Mr. Simms, prior to discharging the defendant and the maid, made a trip back to his home in Oklahoma City. On arriving home he discovered the absence of his house key which he had placed in the door pocket of the Lincoln car, and gained admittance by using his wife's key. On returning to Hot Springs, he drove his LaSalle coupe, and left the Lincoln at the Tower Garage to be washed, cleaned and returned to his garage; that during his absence at Hot Springs, his residence at Nichols Hills was burglarized, and personal property of the value of $2,450 stolen, which personal property was stored in a small portable safe; that the safe had been removed from the house, broken open, and the contents removed; that his Lincoln sedan which he had left at the garage at his residence had apparently been used to carry the safe away from the premises.

Austin Andrews testified that he worked at the Tower service station, Nichols Hills, and on or about the 9th of August, 1936, he washed and cleaned the Lincoln sedan for Mr. Simms and returned it to his double garage, then locked the pulldown door.

Dr. J. G. Duncan testified that he was employed by the State Bureau of Criminal Identification as record clerk, and identified an exhibit introduced by the state, being photograph and fingerprints of C. Taylor.

Clinton Woodle testified that he operated the filling station and grocery one mile from Mustang, on State Highway No. 41; that about sundown, August 24, 1936, a negro driving a Lincoln sedan stopped at his place and he sold him cigarettes and put water in the car radiator; about a week afterwards the safe was found near there. He identified the negro who was driving the car.

R. L. Boulware testified that he lived about one-half mile south and three miles west of Mustang; that he found dials, little hinge knobs, a hammer and two screw drivers

wrapped in newspapers about 75 yards from his home, and about three-quarters of a mile from where the broken safe was found. The newspapers had name "Simms" on slips. That he reported the finding to officers, and later reported finding of the safe on Friday later in the week.

Ben F. Cole, sworn as fingerprint expert, connected with State Bureau of Criminal Identification during the year 1936, testified that he had examined State's Exhibit No. 11A and that the same was a later fingerprint of Choice Jackson, taken off of the Lincoln sedan at 1510 Wilshire Boulevard. That State's Exhibit 11B was a copy of a print taken from the left ring finger of print card of Choice Jackson which was in the files at the State Bureau at the time the investigation was made. State's Exhibit was also a copy of one of the records of the State Bureau, which was also used as a portion of State's Exhibit 1. Witness further testified that under favorable conditions fingerprints would probably remain from 30 to 60 days.

Cliff Myers, court clerk of Oklahoma county, identified the judgment and sentence for burglary in the second degree against the defendant in cause No. 6628.

Claud Tyler testified that in a conversation with the defendant, he stated that he was sent to McAlester for two years and had served the term in case No. 6628.

Ernest Walters testified he lived three quarters of a mile west of Mustang with his parents, that he was putting in wheat for a neighbor in the latter part of August, and on his way home that evening on a bicycle, saw a colored man wearing a chauffeur's uniform, driving a big car which he stopped on a bridge, and witness stopped about 200 feet back from the car; the colored man got out on the right side of the car, which was facing east, and took a box and threw it off of the bridge; a few days later he saw this box, a broken safe, in the gully near

the bridge. When the man went around to the other side of the car and raised the hood up and was looking at the motor, he passed by him.

He further stated that he would not be sure that the defendant was the negro he saw on that occasion, but stated that he looked like the same man.

Melvin Tyler testified that he was marshal of Nichols Hills, went to Mustang and made an investigation on the 28th of August, found pieces of iron, hammers, canceled checks, and other articles introduced as state's exhibits, and stated that the defendant told him that he served a two-year term under the name of Taylor in the penitentiary at McAlester.

At the close of the state's evidence, the defendant interposed a demurrer to the same, which was overruled. Exception.

Thereupon the defendant moved the court to "instruct the jury to return a verdict of not guilty, for the reason that the state has wholly failed to support its case with any competent evidence in that it is all based on circumstantial and hearsay evidence," which was overruled. Exception.

The defendant did not take the witness stand in his own behalf as was his privilege under the laws of this state, and called only one witness, Mrs. Stella Wagner, who testified that she lives at 1325 North Broadway; that during the month of August, 1936, the defendant, Choice Jackson, worked for her every day in August, from 12 to 5 o'clock in the afternoon.

In support of the argument made that the circumstances in evidence are entirely too weak to rebut the presumption of innocence, counsel cite and quote from the cases of Miller v. State, 57 Okla. Cr. 99, 45 P. 2d 769; Edney v. State, 57 Okla. Cr. 303, 48 P. 2d 340; Sasser v. State, 58 Okla. Cr. 382, 54 P. 2d 401, 403.

In the last case cited it is said:

"The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the defendant with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of guilt, and the jury in this case were so instructed by the court. It is the province of the jury to determine the facts and circumstances surrounding the commission of the crime charged, and if, assuming as proved the facts the evidence tends to establish, they can be accounted for upon no rational theory which does not include the guilt of the defendant, the proof cannot be said to have failed.".

The evidence on the part of the state, was, for the most part, circumstantial, and in our opinion the circumstances shown were consistent with each other and inconsistent with any reasonable hypothesis other than that of the guilt of the defendant.

Obviously, the court did not err in overruling the demurrer to the evidence and in refusing to instruct the jury to return a verdict of not guilty.

It is next contended that the court erred in instructing the jury as to two forms of punishment in instruction No. 8.

Even if there were merit in this assignment, counsel would not be in a position to take advantage of the same, unless fundamental, as no objections or exceptions were made or reserved to any of the instructions.

The instructions were as favorable to the defendant as he could have demanded, and we find there is no merit in this assignment.

Upon a consideration of the entire record, we are satisfied that the defendant has no substantial ground of complaint, either of the rulings of the court or the verdict of the jury. It appears that he had a fair and impartial

trial, and under the facts and the law we cannot say that the punishment imposed was excessive.

The judgment of the district court of Oklahoma county herein is therefore affirmed.

BAREFOOT and DAVENPORT, JJ., concur.